UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN GILLIS,
    Plaintiff,

v.                                                            Case No. 12-10734
                                                            Honorable Patrick J. Duggan

WELLS FARGO BANK, N.A.,
    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

On January 25, 2012, Plaintiff Maureen Gillis ("Ms. Gillis") initiated this action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in the Circuit Court for Wayne County, Michigan. In her Complaint, Ms. Gillis alleges the following state law claims against Wells Fargo: (1) conversion; (2) fraud; (3) negligent misrepresentation; (4) innocent misrepresentation; and (5) breach of contract. Wells Fargo removed the Complaint to federal court based on diversity jurisdiction on February 17, 2012. Presently before the Court is Wells Fargo's motion to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) on February 24, 2012. Both parties received extensions of time to file subsequent pleadings in response to and in support of the motion. The motion now is fully briefed and the Court held a motion hearing on June 21, 2012.

I.     **Applicable Standards**[1]

---

[1]Wells Fargo relies on Rule 12(b)(1) only to seek dismissal of Ms. Gillis' claim for equitable relief– i.e. to reverse the Sheriff's Sale and regain title to the Property. In response, Ms. Gillis does not oppose Wells Fargo's motion as to her claim for equitable

As an initial matter, both parties submit documents in support of their pleadings that were not attached to Plaintiff's Complaint. Nevertheless, the Court is not converting Wells Fargo's motion to dismiss as one for summary judgment. The Sixth Circuit has held:

> Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim ... ." In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir.1999) (internal citations omitted). The documents submitted in support of and in response to Wells Fargo's motion are documents Ms. Gillis refers to in her Complaint and that are central to her claims.

A motion to dismiss pursuant Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short

---

relief (although she indicates that she believes she could pursue such relief despite the expiration of the redemption period due to Wells Fargo's fraud). (*See* Pl.'s Resp. at 1-2.) The Court therefore is granting Wells Fargo's motion to dismiss Ms. Gillis' claim for equitable relief.

and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, – , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

A motion to dismiss pursuant to Rule 9(b) applies to a plaintiff's claim(s) for fraud or mistake. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To satisfy the requirements of Rule 9(b), the Sixth Circuit "requir[es] a plaintiff, at a minimum, 'to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex LP*, 2 F.3d 157, 161-162 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1395 (W.D. Mich. 1992)). Reviewing the allegations in the plaintiff's complaint, the court must determine whether the plaintiff sufficiently alleges each particularity requirement with regard to each element of his or her fraud or mistake claim(s).

## II. Factual Background

This case concerns real property located at 3424 Bishop in Detroit, Michigan ("Property"). On May 12, 2006, Ms. Gillis received a loan in the amount of $103,000 from Home Network Mortgage ("Home Network") to secure the Property, as reflected in a Promissory Note ("Note") signed on that date. (Def.'s Mot. Ex. 1.) In exchange for the loan, Ms. Gillis executed a Mortgage on May 12, 2006, which granted a mortgage on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.* Ex. 2.)

The Mortgage provides that the lender may commence foreclosure proceedings against the Property if Ms. Gillis fails to make the monthly payments required under the

Note. (*Id*. at ¶ 22.) The Mortgage required Ms. Gillis to keep the Property insured against loss by, inter alia, fire. (*Id*. ¶ 5.) In accordance with the Mortgage, Ms. Gillis obtained and maintained a homeowners insurance policy through Farm Bureau.

On or about December 13, 2008, the Property caught fire. Thereafter, Ms. Gillis stopped making the monthly payments required under the Note. On February 15, 2009, Wells Fargo (which was servicing the Note) sent a letter to Ms. Willis, notifying her that the loan was in default and that unless she paid $2,927.59 by March 17, 2009, the loan would be accelerated. (Def.'s Mot. Ex. 3.) On some date prior to March 2010, Farm Bureau sent a check to Ms. Gillis for $70,547.00 to cover the fire damage. The check was payable to Ms. Gillis and Wells Fargo.

At the time of the fire, Ms. Gillis owed approximately $100,000.00 on the Note. (Compl. ¶ 10.) Some time after the fire but before March 8, 2010, Ms. Gillis approached Wells Fargo to determine if it would accept the insurance proceeds as payment in full of the amount owed on the Note. (*Id*. ¶ 11.)

Ms. Gillis alleges that "Wells Fargo, through its agents, represented to [her], verbally and in writing, that if she endorsed the insurance check and released it to [Wells Fargo], it would release its lien and mortgage against the subject property and release [Ms. Willis] from any further obligation thereunder." (Compl. ¶ 12.) Ms. Gillis further alleges that Wells Fargo represented to her "that the short pay process had been approved by Fannie Mae, that it would take a few weeks to process the short pay and that thereafter [Wells Fargo]'s lien would be released, at which point, [Ms. Gillis] could obtain the

5

release documents from the register of deeds, and would be free to use or dispose of the [P]roperty as she wanted." (*Id*. ¶ 16.) In response to Wells Fargo's motion, Ms. Gillis submits a letter to her from Lauren Copeland ("Ms. Copeland"), a Wells Fargo Loan Servicing Specialist, answering questions concerning this "short payoff process." (Pl.'s Resp. Ex. 1; *see also* Ex. 2.) The letter is signed by Ms. Copeland. (*Id*. Ex. 1.) Ms. Gillis further submits e-mails she received from Ms. Copeland, in which Ms. Copeland makes the statements alleged by Ms. Gillis in her Complaint (*Id*. Ex. 2.)

In her letter, Ms. Copeland begins by answering Ms. Gillis' question as to what it means to short pay a loan: "The investor accepts funds as satisfaction of the debt. Basically they are accepting your insurance funds and they will call this satisfaction of the mortgage debt." (Pl.'s Resp. Ex. 1.) In response to Ms. Gillis' question as to who owns the home after the transaction, Ms. Copeland writes: "The lien will be released and you will own the property. To obtain the lien papers you can go to the county and they can provide this." (*Id*.) Ms. Copeland also provides Ms. Gillis with information as to where Ms. Gillis should overnight the check from Farm Bureau. (*Id*.)

Ms. Gillis alleges that, based on Wells Fargo's representations, she endorsed Farm Bureau's check and mailed it as instructed to Wells Fargo on or about March 10, 2010. (Compl. ¶ 17.) In e-mails, Ms. Copeland informs Ms. Gillis that once the check is received, she will start the short pay process. (*See* Pl.'s Resp. Ex. 2 at 1 and 2 [3/10/10 email at 12:08 pm; 3/12/10 email at 4:01 pm].) In the same e-mails, Ms. Copeland confirms Wells Fargo's receipt of the check. (Id.) In her March 10, 2010 e-mail message

to Ms. Gillis, Ms. Copeland states that completing the process "only takes a few days or a week at the most" and that "we received Fannie Mae's approval for the short payoff . . .." (*Id.* at 1.)

After endorsing and sending the check to Wells Fargo, Ms. Gillis received a letter from Wells Fargo, dated March 12, 2010, indicating that it had received the proceeds "from the insurance carrier" and that "[a]s provided in your loan documents, these funds will be utilized to repair the damage to the property or to reduce the balance of your loan." (Pl.'s Resp. Ex. 3.) The letter advises Ms. Gillis that if she has any questions she should call a specified toll-free number within the next thirty days. (*Id.*)

Ms. Willis sent an e-mail to Ms. Copeland dated March 30, 2012, summarizing the March 12 letter and asking: "is this anything new or something [I] should be worried about?" (Pl.'s Resp. Ex. 2 at 2.) Ms. Willis informs Ms. Copeland that when she tried to the call the number [presumably the one on the letter], she gets "toss[ed] around 3 times before a recording comes on saying they cannot continue [her] process and then [she is] disconnected." (*Id.*) Ms. Copeland sent an e-mail to Ms. Willis on June 2, 2010 which did not specifically respond to her concerns, but stated: "tried calling someone at Fannie Mae to ask when this will show charged off and the lady was out of the office." (*Id.* at 3.) Ms. Copeland further writes: "the insurance proceeds have been applied to the loan and all that is left is the remainder to be charged off." (*Id.*)

Thereafter, however, Wells Fargo informed Plaintiff that Fannie Mae would not approve the short pay. (Compl. ¶ 18; *see also* Pl.'s Resp. Ex. 2 at 5 [8/23/10 e-mail].)

7

Instead, Wells Fargo applied the insurance proceeds to the balance of the Note leaving a deficiency of approximately $30,000. (Id.) In fact, Wells Fargo already had initiated foreclosure proceedings against the Property, having published notices of the foreclosure in the Detroit Legal News on various dates in April 2009 and by posting the notice at the Property on April 14, 2009. (Def.'s Mot. Ex. 5.) The notices indicate that a Sheriff's Sale would be conducted on May 6, 2009. (*Id.*) The sale eventually occurred on November 24, 2010, with Wells Fargo as the purchaser. (*Id.*) The redemption period expired on May 24, 2011.

### III.    Applicable Law and Analysis

#### A.    Fraud, Misrepresentation, and Breach of Contract Claims

Wells Fargo raises the following arguments in support of its motion to dismiss Ms. Gillis' fraud and misrepresentation claims: (1) the claims are barred by Michigan's statute of frauds for actions against a financial institution to enforce a promise or commitment to modify a loan, Mich. Comp. Laws § 566.132(2); (2) the claims fail because they are based upon future promises; (3) the claims are not pled with sufficient particularity to satisfy Rule 9(b); and (4) Ms. Gillis cannot show reasonable reliance to support her claims. Wells Fargo relies on its first argument to seek dismissal of Ms. Gillis' breach of contract claim as well.

##### 1.    Statute of Frauds

Michigan's statute of frauds prohibits any action against a financial institution to enforce a promise or commitment to provide a financial accommodation "unless the

8

promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws § 566.132(2); *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000) (interpreting Section 566.132(2) as precluding any claim– "no matters its label– against a financial institution to enforce the terms of an oral promise to [make a financial accommodation]."). This Court finds that Wells Fargo's writings to Ms. Gillis– which include e-mails "signed by" Wells Fargo's apparent agent (see *infra*)– satisfy the statute of frauds.

The Michigan Supreme Court "has declined to adopt narrow and rigid rules for compliance with the statute of frauds . . . Instead the Court has adopted a case-by-case approach." *Kelly-Stehney & Assoc. v. Macdonald's Indus. Products, Inc.*, 265 Mich. App. 105, 111, 693 N.W.2d 394, 397 (2005) (citing *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 367, 320 N.W.2d 836, 841 (1982)). The Court has further held that, to satisfy the statute of frauds, the entire agreement does not need to be in writing, "but only requires that 'a note or memorandum of the agreement' is in writing and signed." *Id.*, 693 N.W.2d at 398 (citing Mich. Comp. Laws § 566.132(1); *Opdyke*, 413 Mich. at 367, 320 N.W.2d at 841). The Court provided the following to explain:

> "'Let us proceed, therefore, with a general consideration of what constitutes a sufficient note or memorandum. We may well start with this one general doctrine: There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found. . . . That is the rule of law to be applied with intelligence and discrimination and not like a pedant playing a

game of logomachy.'"

*Id*. at 111-12, 693 N.W.2d at 398 (quoting *Goslin v. Goslin*, 369 Mich. 372, 376, 120 N.W.2d 242, 244 (1963) (additional citations and quotation marks omitted)).

Several writings made at different times may, in combination, satisfy the writing requirement of the statute of frauds. *Kelly-Stehney*, 265 Mich. App. at 113, 693 N.W.2d at 399 (citation omitted). One or more of the writings may be in an electronic format, such as e-mail. *See, e.g.*, *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1362 (Fed. Cir. 2005) (holding that e-mails, like telegrams, may be sufficient to satisfy the statute of frauds' writing requirement); *Cloud Corp. v. Hasbro Inc.*, 314 F.3d 289, 295-96 (7th Cir. 2002) (finding that e-mails from the defendant's agent to the plaintiff, in combination with an additional document, satisfied the statute of frauds by providing adequate documentary evidence of the existence of a contract between the parties and its essential terms); *Adani Exports Ltd. v. AMCI Export Corp.*, No. 05-304, 2007 WL 4298525, at *11 (W.D. Pa. Dec. 4, 2007) (citing cases); *The Dow Chem. Co. v. General Electric Co.*, No. 04-10275, 2005 WL 1862418, at *25 (E.D. Mich. Aug. 4, 2005). Moreover, as mentioned by the courts in *Lamle* and *Cloud*, Congress and many State legislatures (including Michigan's) have adopted uniform electronic transactions acts expressly providing that electronically delivered documents and signatures affixed thereto satisfy the statute of frauds.[2] *See Lamle*, 394 F.3d at 1362 (citing Cal. Civ. Code § 1633.7); *Cloud*, 314 F.3d at 295 (citing

---

[2]The *Lamle* and *Cloud* courts did not rely on the statutes, as the e-mails at issue in those cases were sent before the statute in the applicable jurisdiction took effect.

15 U.S.C. § 7001).

Michigan adopted the uniform act effective October 16, 2000.  *See* Mich. Comp. Laws §§ 450.831-.849.  Section 7 of the statute provides:

> (1) A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form.
>
> (2) A contract shall not be denied legal effect or enforceability solely because an electronic record was used in its formation.
>
> (3) If a law requires a record to be in writing, an electronic record satisfies the law.
>
> (4) If a law requires a signature, an electronic signature satisfies the law.[3]

Mich. Comp. Laws § 450.837.  While the typical e-mail message lacks a hand-written signature and contains only the typed name of the sender, courts have found this sufficient to constitute a signature for purposes of the statute of frauds.  *See, e.g., Lamle*, 394 F.3d at 1362 (finding e-mail, concluding with salutation and name of the defendant's agent, sufficient to satisfy the statute of frauds, reasoning that typed names appearing on the end of telegraphs are sufficient to be writings under the statute); *Cloud*, 314 F.3d at 295-96; *Int'l Casings Grp., Inc. v. Premium Standards Farms, Inc.*, 358 F. Supp. 2d 863 (W.D. Mo. 2005) (finding the names of the party's representatives at the header of e-mails or typed at the bottom of the e-mails, combined with evidence that the named

---

[3] An "electronic signature" is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  Mich. Comp. Laws § 450.832(h).

individuals pushed the "send" button to deliver the e-mails, sufficient to constitute an "electronic signature"); *Roger Edwards, LLC v. Fiddes & Sons, Ltd*. 245 F. Supp. 2d 251, 261 (D. Me. 2003) (e-mails sent by the defendant's agent with the agent's salutation were sufficient to constitute an authorized signature for purposes of the statute of frauds).

The letter Ms. Copeland sent to Ms. Gillis outlining the short payoff process– regardless of the fact that it is undated as Wells Fargo points out– coupled with Ms. Copeland's e-mails to Ms. Gillis which identify Ms. Copeland as the sender and/or contain Ms. Copeland's salutation, are sufficient to satisfy the statute of frauds. These documents contain all of the material terms of a contract, including a representation by Wells Fargo that approval for the short pay had been approved. Thus the Court holds that the statute of limitations set forth in Michigan Compiled Laws § 566.132(2) does not bar Ms. Gillis' claims.

### 2. Future Promises

Under Michigan law, to establish fraud, the statements alleged to be false must relate to past or existing facts, and not to a future promise or expectation. *Cook v. Little Caesars Enterps., Inc.*, 972 F. Supp. 400, 410–411 (E.D. Mich.1997). "Future promises, along with statements pertaining to future events, generally cannot form the basis for a claim of fraud." *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 964 (6th Cir. 2002) (unpublished opinion) (citing *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 750, 407 N.W.2d 6 (1987)). Promises to render future performance are normally considered

contractual in nature, not the basis of a complaint for fraudulent misrepresentation. *Boston Piano and Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 147, 165 N.W.2d 856, 857 (1917). There is a narrow exception to this rule where the promise is "made without a present intention of performance, when the promise is given for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F. Supp. 1290, 1297 (E.D. Mich.1981) (citing *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 78 N.W.2d 209 (1956); *Hi-Way Motor Co.*, 398 Mich. at 339, 247 N.W.2d at 817) ("Th[e 'false token'] exception pertains where, although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a devise to perpetrate a fraud"); *see also Thompson v. Paasche*, 950 F.2d 306, 312 (6th Cir.1991) (citing *Van Marter v. Am. Fid. Life Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679, 684 (1982) ("[U]nder Michigan law, one can be held liable for broken promises when one has, at the time of the promise, a then-existing bad faith intent to break the promise."))

 Construing Ms. Gillis' misrepresentation and fraud claims as alleging that Wells Fargo promised to forgive the remaining balance of the loan and discharge the Mortgage if Ms. Gillis endorsed the insurance check and sent it to Wells Fargo, Wells Fargo argues that the claims allege nothing more than a broken future promise. (Def.'s Br. in Supp. of Mot. at 10, citing Pl.'s Compl. ¶¶ 15, 16.)  Ms. Gillis is asserting, however, that Wells Fargo represented that the short payoff process *had* been approved with respect to her loan, meaning her loan would be satisfied once she endorsed and sent Wells Fargo the insurance proceeds check from Farm Bureau.  As such, she is alleging the

misrepresentation of an existing fact.

### 3. Rule 9(b)'s requirements

Wells Fargo contends that Ms. Gillis fails to plead her misrepresentation and fraud claims with particularity sufficient to satisfy Rule 9(b). Specifically, Wells Fargo points out that Ms. Gillis "does not allege *who* made the representations or statements upon which she claims to have relied, and *when* these purported representations were made." (Def.'s Br. in Supp. of Mot. at 11-12.) While Ms. Gillis' Complaint does not provide the specificity Rule 9(b) requires, she does in her response to Wells Fargo's motion. Thus she demonstrates that any defect in her pleading could be cured by filing an amended complaint.

### 4. Reasonable Reliance

To prevail on her misrepresentation and fraud claims, Ms. Gillis must show *inter alia* that she acted in reasonable reliance on Wells Fargo's alleged misrepresentation(s). *See, e.g.*, *Hi-Way Motor Co.*, 398 Mich. 330, 336, 247 N.W.2d at 818. Wells Fargo argues in its motion that Ms. Gillis fails to plead this element of her claims. (Def.'s Br. in Supp. of Mot. at 12.) Ms. Gillis asserts in response, as she did in her Complaint, that she relied on Wells Fargo's misrepresentations by endorsing Farm Bureau's check and mailing it, as instructed, to Wells Fargo. (Pl.'s Resp. Br. at 12; Pl.'s Compl. ¶ 16.) In reply, Wells Fargo argues that the Mortgage required Ms. Gillis to send the check to Wells Fargo anyway. (Def.'s Reply Br. at 4.)

With respect to insurance proceeds, the Mortgage provides in relevant part:

14

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(Def.'s Mot. Ex. 2 ¶ 5.) As the plain language indicates, the parties could agree in writing to a different use of the insurance proceeds. For the reasons set forth above, the Court finds that Ms. Gillis adequately alleges that such a written agreement was made.

Moreover, the above provision requires Ms. Gillis to provide Wells Fargo with the insurance proceeds to hold *during* the repair and restoration period. While Wells Fargo was entitled under the mortgage to make different use of the proceeds if restoration or repair was not economically feasible or its security would be lessened, there is no evidence before the Court that this was the case. Moreover, consideration of such evidence would be inappropriate to decide this Rule 12(b)(6) motion.

For the above reasons, the Court concludes that Wells Fargo fails to show that Ms. Gillis' misrepresentation, fraud, and breach of contract claims (Counts 2-5) should be dismissed pursuant to Rule 12(b)(6).

### B. Conversion

In her Complaint, Ms. Gillis alleges that Wells Fargo's actions constituted conversion in violation of Michigan Compiled Laws § 600.2919a and the common law.

Wells Fargo maintains that this claim is subject to dismissal because (1) Wells Fargo was identified as a joint payee on the Farm Bureau check and a party cannot convert its own property and (2) it is barred by Michigan's economic loss doctrine.[4]

### 1. Joint Property

Michigan's conversion statute provides, in relevant part:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
(a) Another person's stealing or embezzling property or converting property to the other person's own use.
* * *
(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Mich. Comp. Laws § 600.2919a. "Conversion" for purposes of statutory and common law conversion is defined under Michigan law as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636-37 (6th Cir. 2001) (citation omitted). Michigan's Uniform Commercial Code recognizes common law conversion as applicable to negotiable instruments. *See* Mich. Comp. Laws

---

[4]In its reply brief, Wells Fargo also argues that Ms. Gillis fails to state a viable conversion claim because Wells Fargo properly applied the insurance proceeds as permitted under the Mortgage. (Def.'s Reply Br. at 2-3.) In support of this argument, Wells Fargo makes several material factual assertions that are not found in the Complaint (e.g., that repair of the Property was not economically feasible; that Ms. Gillis made no efforts to arrange for repairs of the property) and therefore are not properly considered on a motion to dismiss. Further, even assuming the Mortgage did allow Wells Fargo to apply the proceeds as it did, Ms. Gillis' claim in her Complaint is that Wells Fargo promised, in writing, to use the proceeds differently.

§ 440.3420(1).

The Farm Bureau check was payable to Ms. Gillis *and* Wells Fargo jointly and thus was the property of both. *See* Mich. Comp. Laws § 440.3110(4); *Trail Clinic, P.C. v. Block*, 114 Mich. App. 700, 705, 486 N.W.2d 600, 640 (1992). The Michigan Supreme Court has held that "a person cannot convert his own property." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992) (internal quotation marks and citation omitted). However, "[c]onversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agriculture v. Appletree Mktg., LLC*, 485 Mich. 1, 14, 779 N.W.2d 237, 244-45 (2010). For example, if certain contractual provisions govern the use of property by its joint owners, one owner's use of the property in contravention of those provisions may constitute conversion. *See, e.g.*, *Bagsby v. Gehres*, 225 F. App'x 337, 348-49 (6th Cir. 2007) (finding issue of fact as to whether the parties had an agreement concerning the use of funds in their joint account, thus precluding summary judgment on the plaintiff's conversion claim); *see also Mitchell v. Reolds Farms Co.*, 268 Mich. 301, 256 N.W. 445 (1934) ("A member of a joint adventure who has been injured by a breach of contract by his associate, or by the latter's conversion to his own use of the joint property or some part of it, may . . . bring an action at law to redress his grievance.").

Thus while the insurance proceeds were the property of Ms. Gillis *and* Wells

Fargo, there also were contractual provisions governing their use of those proceeds.[5] As such, the Court concludes that Ms. Gillis' conversion claim is not subject to dismissal simply because Wells Fargo was a joint payee on the Farm Bureau check.

### 2. Economic Loss Doctrine

The Michigan Supreme Court has summarized the "economic loss" doctrine as follows:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 520-21, 486 N.W.2d 612, 615 (1992) (internal quotations marks, footnotes, and citations omitted). Generally the doctrine bars actions in tort where the defendant does not owe a duty to the plaintiff that is separate and distinct from the parties' contractual obligations. The Michigan Court of Appeals has recognized, however, that "[t]he viability of the doctrine in actions for intentional torts . . . remains an unaddressed issue in Michigan." *Huron Tool and Eng'g*

---

[5]In its motion, Wells Fargo asserts that "there can be no dispute that Wells Fargo obtained the money with Plaintiff's consent." (Def.'s Br. in Supp. of Mot. at 14.) According to Ms. Gillis' Complaint, however, she endorsed and sent the check to Wells Fargo based on Wells Fargo's alleged promise that the loan would be considered fully paid and the lien released. Consent is only effective within the scope given and it is not effective if it was obtained through fraud.

*Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 543 (1995). Moreover, Ms. Gillis did not necessarily suffer only economic losses as a result of Wells Fargo's alleged misconduct.

The Court therefore finds that Ms. Gillis' conversion claim is not subject to dismissal pursuant to Rule 12(b)(6).

## IV. Conclusion

For the reasons set forth above, this Court concludes that Ms. Gillis states– or presents facts and evidence in response to Wells Fargo's motion demonstrating she could state in an amended complaint– viable claims of misrepresentation, fraud, conversion, and breach of contract. Ms. Gillis does not oppose Wells Fargo's motion to dismiss her request for equitable relief. *See supra* at n.1.

Accordingly,

**IT IS ORDERED**, that Defendant Wells Fargo Bank N.A.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) is **GRANTED IN PART AND DENIED IN PART** in that only her claim for equitable relief is dismissed.

Dated:June 25, 2012     s/PATRICK J. DUGGAN
                        UNITED STATES DISTRICT JUDGE

Copies to:
Kevin Ernst, Esq.
Dean Elliott, Esq.
Lori McAllister, Esq.
Michael J. Blalock, Esq.
Brandon M. Blazo, Esq.