UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN GILLIS,

                Plaintiff,                        Civil Action No.
                                                12-CV-10734

vs.

                                                Honorable Patrick J. Duggan

WELLS FARGO BANK, N.A.,

                Defendant.

_____/

**OPINION (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION INSOFAR AS CONSISTENT WITH THIS OPINION AND ORDER, (2) DENYING ERNST LAW FIRM, PLC'S MOTION REGARDING DIVISION OF ATTORNEY FEES, and (3) UNSEALING THESE ANCILLARY PROCEEDINGS**

## I.  INTRODUCTION

This is a conversion, fraud, and breach of contract dispute between Plaintiff Maureen Gillis and Defendant Wells Fargo Bank, N.A. (Wells Fargo).  After the Court granted summary judgment in favor of Gillis on her breach of contract and conversion claims against Wells Fargo, *see Gillis v. Wells Fargo Bank, N.A.*, No. 12-CV-10734, 2013 WL 2250215 (E.D. Mich. May 22, 2013), the parties settled their dispute.  But a new dispute arose – one between Gillis and her former attorney, Kevin S. Ernst of Ernst Law Firm, PLC – over the proper amount of attorney fees due Ernst for work performed in this lawsuit.  The Court has ancillary

jurisdiction to resolve this disagreement.  *See Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 542 (6th Cir. 2013) ("For years, indeed since the early years of the republic, federal courts have resolved fee disputes between lawyers and their clients when those disputes arise out of the underlying case."); *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982) ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.").

The Court referred the matter to Magistrate Judge Michael Hluchaniuk, who held an evidentiary hearing on January 29, 2014 and issued a Report and Recommendation (R&R) on June 30, 2014 recommending that Ernst's motion for division of attorney fees be denied.  Ernst filed objections to the R&R and Gillis, through her new attorney, filed a response.  The Court has reviewed this matter *de novo* and, for the reasons that follow, agrees with the Magistrate Judge that Ernst's motion for division of attorney fees should be denied.[1]

---

[1] Before proceeding further, the Court notes that these ancillary proceedings – the motion papers, the transcript of the evidentiary hearing, the parties' proposed findings of fact and conclusions of law, the Magistrate Judge's R&R, and the objections thereto – have been filed under seal.  However, this Court's Local Rules require parties to obtain a court order permitting sealing *before* filing any item under seal, unless "a statute or rule authorizes filing a document or other item under seal."  E.D. Mich. LR 5.3.  No statute or rule of which this Court is aware authorizes the sealing of these proceedings, and no request to file a document under seal has been made by any party in this case.  Thus, the Court will order the

# II. BACKGROUND[2]

Before this lawsuit was filed, Gillis and Ernst entered into a written contingent fee agreement under which Ernst would receive as compensation for his work on the case one-third of "all sums recovered by settlement or judgment" after first deducting costs from the amount recovered.   Contingent Fee Agreement ¶ 2 (ECF No. 49-2 Page ID 906).   The agreement, which was drafted by Ernst, explicitly forbids subsequent oral modifications: "The provisions of this agreement

---

Clerk of Court to unseal the following documents that have been filed under seal without proper authorization: ECF Nos. 49-51, 54-55, 57-58, 61, 68, 72, and 73.

The Court acknowledges that the content of a confidential settlement agreement between Gillis and Wells Fargo is discussed in these proceedings and that the agreement itself is contained in the record.   However, while "[t]he parties are privileged to negotiate in secret, . . . they must litigate in public," and [s]ealing court records . . . is deemed a drastic step, which must be justified by 'the most compelling reasons.'"   *Encana Oil & Gas (USA), Inc. v. Zaremba Family Farms, Inc.*, No. 12-369, 2012 WL 1377598, at **1-2 (W.D. Mich. Apr. 19, 2012) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). Here, no party has attempted to make any showing, compelling or otherwise, justifying the sealing of these proceedings.   The issue of sealing was discussed briefly during the evidentiary hearing over which Magistrate Judge Hluchaniuk presided.   Ernst stated that he filed the motion under seal because matters contained in the parties' confidential settlement agreement are referenced. Magistrate Judge Hluchaniuk ordered that the transcript of the evidentiary hearing be sealed "unless ordered unsealed by a Court following today's proceeding." 1/29/14 Hr'g Tr. 61-62 (ECF No. 61 Page ID 1096-97).   Notably, the pertinent Local Rule and case law authority was not cited or discussed during the evidentiary hearing.   For the reasons discussed above, the Court now unseals these proceedings.

[2] The following background facts are gleaned from the evidentiary hearing held by Magistrate Judge Hluchaniuk on January 29, 2014 and from the evidence attached to the parties' motion papers.

may not be modified or waived except in a writing signed and executed by all parties." *Id.* ¶ 13 (ECF No. 49-2 Page ID 909).

After Gillis signed the contingent fee agreement, Ernst did some additional legal research and consulted Dean Elliott, another attorney. The two determined that a potential statutory conversion claim existed against Wells Fargo and that, if successful, Gillis may be entitled to an award of attorney fees from Wells Fargo pursuant to the fee-shifting provision of Michigan's conversion statute. *See* Mich. Comp. Laws § 600.2919a ("A person damaged as a result of [a conversion] may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees.").

After discovering the potential conversion claim, Ernst spoke to Gillis and the two orally agreed that, if successful on the conversion claim, Ernst and Elliott would receive the full amount of any attorney fee award in addition to one-third of the other sums recovered in the lawsuit.[3] Gillis admits that she orally agreed to this arrangement and gave Ernst an affirmative response indicating her approval, although Gillis testified that she "didn't understand [the arrangement] at the time." Moreover, Gillis admitted that she did not ask Ernst any questions about the arrangement, did not otherwise seek clarification, and did not ask Ernst to put the

---

[3] Elliott was not a party to the written contingent fee agreement because his involvement in this matter postdated the written agreement.

oral agreement in writing. Gillis conceded that, based on her statements to Ernst, he would have reasonably believed that she agreed to the oral arrangement. 1/29/14 Hr'g Tr. 41-44 (ECF No. 61 Page ID 1076-79).

Ernst and Elliott, on behalf of Gillis, eventually sought and obtained summary judgment on the conversion claim; however, the Court did not rule on damages at that time, instead reserving the ruling for a later date. *See Gillis*, 2013 WL 2250215, at *13 ("The Court reserves ruling on the amount of damages [Gillis] is entitled to under her conversion claim.").

However, that later date never came, as Gillis and Wells Fargo settled their dispute for $312,000 following a settlement conference over which this Court presided. During Ernst's settlement discussions with Wells Fargo, Ernst emphasized the fact that Wells Fargo could be responsible for Gillis' attorney fees, which at that time had reached approximately $130,000. In others words, Ernst "leveraged" Wells Fargo's potential attorney fee exposure to boost the settlement value of the case. The parties entered into a written settlement agreement under which "Wells Fargo agree[d] to pay Gillis . . . $312,000" as a "Settlement Payment" in exchange for relinquishing her claims. Confidential Settlement Agreement & Release ¶ III.C (ECF No. 50-3 Page ID 956).

Pursuant to the written contingent fee agreement, Ernst should have received approximately $104,000 (one-third of $312,000) and Gillis should have received

approximately $208,000 (two-thirds of $312,00).[4]  Instead, however, Ernst gave Gillis a check for only $156,000, which is one-half of the settlement amount. According to Ernst, the written contingent fee agreement was orally modified a second time – this time during the settlement conference.   The following circumstances led to the second purported oral modification.

During the settlement conference – after Wells Fargo offered to settle the case for $312,000 but before Gillis accepted the settlement offer – Ernst called Gillis, who was participating telephonically in the settlement conference, and explained that a settlement offer of $312,000 was on the table, and that based on the first oral modification to the contingent fee agreement, discussed above, Ernst would be entitled to his attorney fees so far (which at that time totaled approximately $130,000) plus approximately $104,000, which is one-third of the settlement amount, for a total of $234,000.  However, Ernst explained to Gillis that because $234,000 constitutes more than half of the settlement offer and "it's [not] fair [for the attorney] to take more than half," Ernst orally proposed that he and Gillis each take half of the settlement amount, with Ernst paying costs (totaling approximately $2,500) from his share.  Ernst told Gillis over the phone that she would "walk away with one hundred and fifty-six [thousand]."  1/29/14 Hr'g Tr. 11, 47-49 (ECF No. 61 Page ID 1046, 1082-84).

---

[4] In computing these numbers, the Court disregards the issue of costs, which would alter the numbers slightly.

Gillis admits that she orally agreed to this arrangement by giving Ernst an affirmative verbal response, but states that she nonetheless always understood that she was entitled to two-thirds of her recovery pursuant to the written contingent fee agreement, which she did not think could be changed absent a written, signed agreement. The following colloquy ensued at the evidentiary hearing before Magistrate Judge Hluchaniuk:

> Q [by Ernst]: How is it that you could understand that you were going to get two-thirds when I just told you [over the phone, during the settlement conference] you were going to get half?
>
> A [by Gillis]: I assumed there was something I was missing that possibly that $70,000 check had some value in there which would have made it kind of a two-thirds, one-third. I didn't. . . . That I was just trusting that the only thing I had signed said two-third, one-third. And however – whatever numbers you were quoting, that when I saw something in writing it would be explained and that it would come out to two-thirds, one-third.

Once again, Gillis admits that she did not ask Ernst for clarification regarding the new arrangement, did not ask Ernst to reduce it to writing, and, based on her statements to Ernst, he would have reasonably believed that she agreed to the oral modification. *Id.* at 49-50 (ECF No. 61 Page ID 1084-85).

After Gillis orally agreed to evenly split the settlement offer, Ernst, on behalf of Gillis, accepted the offer. Gillis was eventually given a check marked "final settlement payment" in the amount of $156,000. However, a dispute subsequently arose, leading to these ancillary proceedings. Gillis' position is that

7

both purported oral modifications are invalid and that, pursuant to the written contingent fee agreement, she is entitled to approximately $208,000, which is two-thirds of the settlement amount. Because Gillis already received $156,000, the amount currently at issue is approximately $52,000.

### III.  ANALYSIS

In his R&R, Magistrate Judge Hluchaniuk summarized the arguments made by the parties in their motion papers. The Court does not restate those arguments here and instead proceeds directly to its legal analysis.

"A contingent fee contract has been defined as a fee agreement under which the attorney will not be paid unless the client is successful. Under such a definition, if payment to the attorney is certain, the contract is not a contingent fee agreement even if the amount of the fee might vary depending on the result in the matter." 1 Robert L. Rossi, Attorneys' Fees § 2:1 (3d ed. 2014). *See also* 23 Williston on Contracts § 62:4 (2002) ("A contingent fee for attorney services is one that depends upon the success or failure in an effort to enforce a supposed right. Thus, under a contingency fee contract, the attorney is not entitled to receive payment for services rendered, unless the client succeeds in recovering money damages." (footnote omitted)). In Michigan, contingent fee agreements must be in writing; oral contingent fee agreements are unenforceable. *See* Mich. R. Prof'l Conduct 1.5(c) ("A contingent-fee agreement shall be in writing."); 7A C.J.S.

8

Attorney & Client § 392 (2004) ("An oral contingent fee agreement is not enforceable and the attorney cannot recover the fee amount specified in the oral agreement." (footnote omitted)); Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics - The Lawyer's Deskbook on Professional Responsibility § 1.5-3 (2013-2014 ed.) ("[A]ll contingent fee arrangements must be in writing.").

The written contingent fee agreement between Gillis and Ernst allocates to Ernst one-third of "all sums recovered by settlement or judgment."  Given that there is no provision in the written agreement separately addressing attorney fee awards and the phrase "all sums" is broad enough to encompass an award of attorney fees, Ernst would not be entitled to the full amount of any attorney fee award under the terms of the parties' written agreement.[5]  Rather, under the written contingent fee agreement, an attorney fee award is treated like any other aspect of the recovery and subject to a one-third/two-thirds split.[6]

---

[5] In the absence of an agreement otherwise or a court order, an attorney fee award belongs to the client and not the client's attorney. *See* Restatement (Third) of The Law Governing Lawyers § 38(3) (2000) ("Unless a contract construed in the circumstances indicates otherwise . . . payments that the law requires an opposing party or that party's lawyer to pay as attorney-fee awards . . . are credited to the client, not the client's lawyer, absent a contrary statute or court order.").

[6] Ernst argues that the written agreement is "silent" as to the division of attorney fee awards.  While it is true that the agreement does not specifically mention attorney fee awards, the agreement does provide that "all sums recovered" are subject to a one-third/two-thirds split.  The recovery of attorney fees would clearly fit within the category of "all sums."  If it was Ernst's intention to treat attorney fee awards differently, it was his responsibility to so indicate in the written agreement.

After Gillis signed the written contingent fee agreement, Ernst sought to modify its terms by changing the way in which an attorney fee award would be treated. Instead of a one-third/two-thirds split of "all sums recovered," which would include the recovery of an attorney fee award, Ernst sought to differentiate an attorney fee award from other sums recovered. This purported modification amounts to a new contingent fee agreement under which Ernst would be entitled to 100% of any attorney fees recovered and one-third of all other sums recovered if successful in prosecuting Gillis' claims.[7] Because all contingent fee agreements in Michigan must be in writing and this one was oral, it is not enforceable.

Alternatively, even if the oral modification were enforceable, the Court would still conclude that Ernst is not entitled to more than one-third of the settlement amount pursuant to the purported oral modification. The oral agreement, according to Ernst, was that Ernst would get "any attorney's fees

---

*See Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis.2d 493, 508, 577 N.W.2d 617, 623 (1998) ("[T]he burden is on the attorney who possesses legal knowledge and who drafts the agreement to state clearly the terms of the fee agreement and to address specifically the allocation of court-awarded attorney fees.").

[7] The purported oral agreement allocating the full amount of any attorney fee award and one-third of other sums to Ernst fits within the definition of a contingent fee agreement because Ernst would be entitled to the full amount of any attorney fee award and one-third of other sums recovered only if he obtained a successful outcome for Gillis. *See* Rossi § 2:1 (defining a contingent fee agreement "as a fee agreement under which the attorney will not be paid unless the client is successful."). At the time of the purported oral modification, Ernst had not yet achieved a successful outcome for Gillis.

10

payable by Wells Fargo . . . in addition to the one-third of any potential damages."
1/29/14 Hr'g Tr. 7-8 (ECF No. 61 Page ID 1042-43).  However, no attorney fees
were ever awarded in this case.  During the summary judgment proceedings, the
Court explicitly declined to rule on the issue of damages relating to Gillis'
conversion claim: "The Court reserves ruling on the amount of damages she is
entitled to under her conversion claim."  *Gillis*, 2013 WL 2250215, at *13.
Likewise, the settlement agreement between Gillis and Wells Fargo does not
earmark any sum of money as an attorney fee award; it merely provides that
"Wells Fargo agrees to pay Gillis . . . $312,000" as a "Settlement Payment" in
exchange for relinquishing her claims.  Confidential Settlement Agreement &
Release ¶ III.C (ECF No. 50-3 Page ID 956).  While Wells Fargo's potential
exposure to Gillis' attorney fees may have played a significant role in the
settlement negotiations, there is no basis on this record to conclude that any
specific portion of that amount constituted an attorney fee award.

 For these reasons, Ernst is not entitled to more than one-third of the
settlement amount.  The first purported oral modification to the written contingent
fee agreement is not enforceable.

 The second purported oral modification, however, presents a more difficult
question.   Under this purported modification to the written contingent fee
agreement, Ernst and Gillis orally agreed, during the settlement conference, that

they would evenly split the $312,000 settlement amount that had been offered, with Ernst paying costs from his share in the amount of approximately $2,500. This new agreement, unlike the first purported oral modification, is not a contingent fee agreement; at the time Ernest and Gillis agreed to evenly split the offered amount of $312,000, an offer to settle the case in that amount was on the table and, at that moment, Ernst had achieved a successful outcome for Gillis by eliciting the settlement offer from Wells Fargo.   Because there is no rule prohibiting oral non-contingent fee agreements between attorney and client, the second purported oral modification, unlike the first one, is not unenforceable on the ground that it was not reduced to writing pursuant to Michigan Rule of Professional Conduct 1.5(c).

However, under Michigan law, special rules govern an attorney's ability to modify a contract with a client once the attorney-client relationship has begun:

> The relationship between client and attorney is a fiduciary one, not measured by the rule of dealing at arm's length.  They can agree upon fees, but if the agreement is made after the relationship is begun, it is subject to scrutiny by the court in case of dispute. . . . On the other hand, a client is not necessarily an incompetent before the law and if he acquiesces in a charge as a free contracting person, with knowledge of the facts, and especially if he acquiesces in it for a reasonable time, there is no reason for the court to put him under guardianship by revaluing the services or scrutinizing them critically or to the unfair disadvantage of the attorney.  His account stated will be binding although he may have some criticism of the fees.

12

*Rippey v. Wilson*, 280 Mich. 233, 243-44, 273 N.W. 552, 555 (1937). Similarly, under the Restatement (Third) of the Law Governing Lawyers (2000) ("Restatement"), which is "consistent with Michigan's Rules of Professional Conduct in all respects," *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409-10 (6th Cir. 2008), "[c]lient-lawyer fee contracts entered into after the matter in question is under way are subject to special scrutiny" and are binding if "fair and equitable in view of circumstances unanticipated when [the] contract was made." Restatement § 18 cmt. e.

It is Ernst's burden to show that the oral modification to the written contingent fee agreement was fair and equitable. *See id.* ("If the client and lawyer made an initial contract and the postinception contract in question is a modification of that contract, the client may avoid the contract unless the lawyer [shows that the modification was fair and reasonable to the client]."). For the following reasons, the Court concludes that Ernst has not met his burden of showing that the modification was reasonable and fair and that, accordingly, the oral modification may be voided by Gillis.

The written contingent fee agreement that Ernst himself drafted contains a clause that very clearly forbids, without exception, subsequent oral modifications to the written agreement: "The provisions of this agreement may not be modified or waived except in a writing signed and executed by all parties." Contingent Fee

13

Agreement ¶ 13 (ECF No. 49-2 Page ID 909).  While the Court acknowledges the authority on which Ernest relies demonstrating that parties may, as a matter of general contract law under certain circumstances, orally modify a contract containing a clause prohibiting oral modifications, *see, e.g., Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372, 666 N.W.2d 251, 257 (2003) ("[C]ontracts with written modification or anti-waiver clauses can be modified or waived notwithstanding their restrictive amendment clauses."), the usual rules of contract construction do not apply to the present dispute.  Rather, the Court is obligated to construe the provisions of the written contingent fee agreement from the perspective of a reasonable client.  *See* Restatement § 18 cmt. h ("[C]ontracts between clients and lawyers are to be construed from the standpoint of a reasonable person in the client's circumstances.").  As a result, "[t]he lawyer . . . bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations." *Id.*  For example, this rule would "require[] . . . that a lawyer's contract to represent a client in 'your suit' be construed to include representation in appropriate appeals if the lawyer had not stated that appeals were excluded." *Id.*

In the same way, the Court easily concludes that a reasonable client under the circumstances would construe the no-oral-modifications provision contained in the written contingent fee agreement to mean exactly what it says.  Although Ernst

14

may have known of law in Michigan allowing oral modifications to contracts that explicitly forbid oral modifications, it would be patently unreasonable to expect a client with no legal training to know of such authority. Indeed, the record here reflects that Gillis was not aware of such authority, as she testified that it was her belief, based on the no-oral-modifications clause, that the written contingent fee agreement could not be orally modified. 1/29/14 Hr'g Tr. 91-92 (ECF No. 61 Page ID 1126-27).

Ernst's reliance on *Biedul v. Siefman*, No. 263736, 2006 WL 3375317 (Mich. Ct. App. Nov. 21, 2006) is misplaced. In that case, the Michigan Court of Appeals refused to disturb a jury verdict enforcing an oral modification to a fee agreement between an attorney and his client where the client's breach of the initial fee agreement prompted the attorney to seek a modified fee arrangement. However, the initial fee agreement in *Biedul* did not contain a clause prohibiting subsequent oral modifications. For this reason, *Biedul* is not relevant here.

Alternatively, even if the written contingent fee agreement had not contained a clause prohibiting subsequent oral modifications, the Court would still conclude that the second oral modification is unenforceable. In eliciting Gillis' agreement to evenly split the $312,000 settlement offer, Ernst told Gillis that he (Ernst) would be entitled to approximately $234,000 of the $312,000 settlement amount pursuant to the first purported oral modification, and that a second oral modification was

15

therefore necessary so that Ernst would not receive more than half of the recovery. However, for the reasons explained above, Ernst was not, in fact, entitled to $234,000 under the first purported oral modification because that modification constituted an unenforceable oral contingent fee agreement. Thus, Ernst has not adequately demonstrated that Gillis had an accurate understanding of the circumstances prompting the need for a modification. *See* Restatement § 18 cmt. e (to enforce mid-litigation modification to contract between lawyer and client, "the lawyer must show that the client was adequately aware of the effects and any material disadvantages of the proposed contract, including, if applicable, circumstances concerning the need for modification.").

For these reasons, the Court concludes that the second purported oral modification to the written contingent fee agreement is not fair and reasonable to Gillis. Therefore, the Court does not enforce that modification.

## IV.  CONCLUSION

For the reasons stated above, the Magistrate Judge's R&R is **ADOPTED** insofar as consistent with this Opinion and Order, and Ernst's motion for division of attorney fees is **DENIED**. The Court enforces the written contingent agreement between Ernst and Gillis as written and does not enforce either of the two subsequent purported oral modifications to that agreement. Accordingly, Ernst is entitled to one-third of the amount recovered after first deducting costs; Gillis is

16

entitled to the remainder.  Assuming costs were $2,500, Ernst is entitled to one-third of $309,500, which is $103,166.67, and Gillis is entitled to the remainder, which is $208,833.33.  Given that Ernst already provided Gillis a check in the amount of $156,000, Gillis is owed $52,833.33.

The Clerk of Court shall **UNSEAL** these proceedings, including ECF Nos. 49-51, 54-55, 57-58, 61, 68, 72, and 73.

**SO ORDERED**.

Dated: September 30, 2014                    s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:

Dean D. Elliott, Esq.
Kevin S. Ernst, Esq.
Timothy J. Jordan, Esq.
Michael J. Blalock, Esq.